Filed 5/2/13  P. v. Taylor-Ameneyro CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

| | |
|---|---|
| THE PEOPLE, | C069141 |
| Plaintiff and Respondent, | (Super. Ct. No. P08CRF0429) |
| v. | |
| AMY DIANNE TAYLOR-AMENEYRO, | |
| Defendant and Appellant. | |

In this case the trial court instructed the jury that the testimony of a single witness can prove any fact -- except for that of defendant Amy Dianne Taylor-Ameneyro, which required supporting evidence.  The court did not explain why the jury should treat defendant's testimony differently from that of any other witness.  Defendant contends this instruction was reversible error.  We agree that it was error, but find it harmless under the standard of *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705] (*Chapman*).  Therefore we shall affirm, although we must remand the matter for correction of the abstract of judgment.

1

# FACTUAL AND PROCEDURAL BACKGROUND

Defendant and codefendant Jefferey Alan Matthews were jointly charged with conspiracy to transport, possess for sale, and possess methamphetamine (count 1; Pen. Code, § 182, subd. (a)(1)),[1] transportation of methamphetamine (count 2; Health & Saf. Code, § 11379, subd. (a)), possession of methamphetamine for sale (count 3; Health & Saf. Code, § 11378), and simple possession of methamphetamine (count 4; Health & Saf. Code, § 11377, subd. (a)).

In the first trial, defendant testified and put on other witnesses; codefendant put on no evidence. The jury convicted defendant on counts 2 and 4 (transportation and simple possession), but hung on counts 1 and 3 (conspiracy and possession for sale), and hung on all counts as to codefendant.

In the second trial, which encompassed all counts not decided at the first trial, neither defendant testified nor put on evidence. The jury convicted both defendants on all counts.[2]

The trial court sentenced defendant to a state prison term of two years on count 2, with a two-year sentence on count 1 to be served concurrently, and the sentence on count 4 to be stayed under section 654.

## Trial Evidence

As the instruction at issue was given only in the first trial, we set out only the evidence presented in that trial.

---

[1] Further undesignated section references are to the Penal Code.

[2] Because the jury was improperly asked to make, and did make, a finding as to codefendant's prior conviction (on which no evidence had been presented), the trial court granted defendant's motion for new trial on counts 1 and 3. Thereafter, however, defendant entered a no contest plea to count 1, and count 3 was dismissed in the interest of justice.

*Prosecution Case*

At approximately 1:15 a.m. on September 25, 2008 (further dates are in 2008 unless otherwise stated), El Dorado County Sheriff's Deputy James Peterson saw three cars traveling on Missouri Flat Road, appearing to be too close together. Running the license plate of the rear car, a Thunderbird, he learned that the car's registration had been suspended.

Deputy Peterson contacted defendant, the driver of the Thunderbird, and codefendant, the driver of the second car (a Camaro), at a gas station.[3] They eventually admitted they were traveling together.

Speaking to defendant first, Deputy Peterson found that she seemed extremely nervous. She kept touching a bulge in the pocket of her small, tight-fitting sweatshirt (which she had been wearing from the start of the encounter). Deputy Peterson asked defendant what was in the pocket; she replied "feminine products." He ordered her to remove the object and put it on his patrol car. She took out a zippered cloth pouch. When she put it on the patrol car, something inside it magnetized it to the car.

Deputy Peterson suspected from defendant's mannerisms and behavior that she was under the influence of a controlled substance, most likely methamphetamine. Administering field sobriety tests, he confirmed his suspicions to his own satisfaction. Defendant denied taking methamphetamine and said she had recently taken prescription medication. As she grabbed her purse, Deputy Peterson saw a marijuana pipe in the car door.

Searching the pouch defendant had placed on his patrol car, Deputy Peterson found three baggies which turned out to contain 45.3 grams of methamphetamine in total. The magnet in the pouch suggested to him that there might be a hide-a-key under one of

---

**3**     The lead car, driven by defense witness Marja Glasser, was not there.

the cars. Under defendant's car he found marks on the inside of the wheel wells. Under codefendant's Camaro, Deputy Peterson found a large baggie containing a magnet and 18 small empty baggies, attached to the inside of a wheel well. He then searched codefendant's wallet and found what appeared to be pay-owe sheets. Defendant had $240 in her wallet and $265 in her purse; codefendant had $45 in his wallet. An expert witness opined, based on all the circumstances, that defendant and codefendant possessed methamphetamine for sale.

When Deputy Peterson detained defendant and codefendant in his patrol car, he secretly placed a digital recorder inside with them. According to a transcript of their conversation, defendant said "it" had been tucked under the wheel; codefendant said he wished "it" had been under the hood. After they spotted the recorder's microphone, defendant said "it" was not hers; she also said her sweatshirt was borrowed. Codefendant corroborated the latter statement in a subsequent conversation with Deputy Peterson.

*Defense Case*

Elizabeth Neubacher, a friend of defendant, testified that around three weeks before the events described above, she visited defendant's house in Sacramento with a friend who wanted to buy a Camaro owned by defendant. They found defendant and Aaron Gillis jumpstarting the Camaro with jumper cables. Gillis and Richard Lenning drove off with the car because they intended to buy it.

Marja Glasser, a friend of defendant who was also the roommate of Gillis's girlfriend, testified that the Camaro was dropped off at her residence in El Dorado County in early September 2008. She knew Gillis and Lenning; they were big men, much larger than defendant. She never saw either man in possession of the Camaro.

According to Glasser, defendant's car sat in Glasser's driveway until the night of September 24, when defendant and codefendant came to pick it up. Defendant looked cold; she was also in great pain and disoriented from a migraine headache, which she

4

suffered from chronically. So far as Glasser could recall, defendant did not have a jacket or sweatshirt on.

Glasser saw defendant and codefendant trying to jumpstart the Camaro. While codefendant was at the other end of the driveway, defendant asked for directions to a gas station, but the directions were complicated and defendant could not take them in. Glasser proposed to drive to the nearest station, with defendant following her in the Thunderbird and codefendant in the Camaro; they agreed to this plan.

Defendant testified as follows:

She let Gillis and Lenning drive her Camaro away because they wanted to buy it. But after they failed to get back to her about the car, and her boyfriend (codefendant) expressed interest in buying it, she decided to sell it to him instead.

On the evening of September 24, defendant and codefendant drove to Glasser's house in defendant's Thunderbird to get the Camaro; codefendant sat in the front passenger seat, which contained no other items. Defendant was wearing jeans and a T-shirt.

Defendant had a migraine headache, for which she took prescription medication; she had also smoked marijuana (recommended orally, but not in writing) earlier in the day. Another way she treated her migraines was to use a small vibrator, which she kept along with feminine products in a black pouch in her purse.

When defendant and codefendant got to Glasser's house, codefendant could not start the Camaro. Defendant and codefendant jumpstarted it; codefendant cleaned it out and moved its contents into defendant's Thunderbird. After he finished, Glasser led defendant and codefendant down to a gas station, then left.

When the officer detained defendant and codefendant, defendant grabbed a sweatshirt from the passenger seat because it was cold outside. The sweatshirt, which

5

had come from the Camaro, was too big for her.[4] She did not know it had anything in the pocket. Finding a bag in the pocket, she thought it was hers.[5] Sick and confused from her migraine, she gave the officer that bag, but denied him permission to search it because she feared being embarrassed if the officer saw the vibrator and the other items she thought he would find. She had no idea the bag contained methamphetamine. She had not used methamphetamine that day or the previous day.

After the officer spotted the marijuana pipe in defendant's car, she feared she would be arrested for that. When she and codefendant spoke in the officer's patrol car, the item codefendant said he wished had been under the hood was the marijuana pipe.

### The Instruction

The trial court proposed to instruct the jury with the following version of CALCRIM No. 301: "Except for the testimony of Amy Taylor-Ameneyro, which requires supporting evidence, the testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all of the evidence."[6]

---

[4]    The sweatshirt was not in evidence at trial. Defense counsel told the trial court in camera that it had apparently been disposed of along with the car's other contents.

[5]    Defendant also testified, however, that the bag was not in the pocket of the sweatshirt, but was hanging from its front or its zipper.

[6]    CALCRIM No. 301 ("Single Witness's Testimony") reads as follows: "[Except for the testimony of _____ <insert witness's name>, which requires supporting evidence [if you decide (he/she) is an accomplice],] (the/The) testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence." (CALCRIM No. 301 (2012) p. 81.)

The Bench Notes state: "The following constitutional provisions and statutes require evidence that corroborates a witness's testimony: Cal. Const., art. I, § 18 [treason]; Pen. Code, §§ 1111 [accomplice testimony]; 653f [solicitation of felony]; 118 [perjury]; 1108 [abortion and seduction of minor]; 532 [obtaining property by false pretenses]. [¶] Give the bracketed phrase 'if you decide (he/she) is an accomplice' and

6

Defense counsel asked the court whether this instruction was "based on the coconspirator theory where the coconspirator statement has to be corroborated . . . ." The court replied: "Accomplice. Testimony of an accomplice or other witness requires corroboration. So that's why that's included in this. Accomplice testimony requires corroboration. Okay?" Counsel said: "Okay."

The court gave the instruction as proposed. The court did not instruct on accomplices.

## DISCUSSION

### I

Defendant contends that to give CALCRIM No. 301 in this form was error reversible per se because the instruction impermissibly shifted the burden of proof to her, lightened the prosecution's burden of proof, and denied her the opportunity to present a defense, in violation of her rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Alternatively, defendant contends that even if not reversible per se, the error cannot be harmless under *Chapman*. Lastly, defendant contends that her failure to object below did not forfeit the issue because the instruction was a misstatement of law that affected her substantial rights. (§ 1259.)

The Attorney General replies that the contention is forfeited because defendant failed to object to the instruction, and that any error was harmless.

We agree with defendant that the trial court erred and the contention is not forfeited, but agree with the Attorney General that the error is harmless.

CALCRIM No. 334 if the jury must determine whether a witness is an accomplice."
(Bench Note to CALCRIM No. 301 (2012) p. 81.)

7

## The Contention Is Not Forfeited Because the Instruction Was Erroneous and Affected Defendant's Substantial Rights

"Upon an appeal taken by the defendant, . . . [t]he appellate court may . . . review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." (§ 1259.)

The Attorney General asserts that section 1259 does not apply because the instruction given was correct in law and responsive to the evidence, and defendant did not request modification or clarification. (See *People v. Guerra* (2006) 37 Cal.4th 1067, 1134; *People v. Hart* (1999) 20 Cal.4th 546, 622; *People v. Hardy* (1992) 2 Cal.4th 86, 153.) We disagree with the Attorney General's assessment of the instruction.

"[E]ven in the absence of a request, a trial court must instruct on general principles of law that are commonly or closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case. [Citations.]" (*People v. Montoya* (1994) 7 Cal.4th 1027, 1047; cf. §§ 1093, subd. (f), 1127.) The instruction at issue violated this rule.

Although the court concluded that defendant's testimony needed corroboration because she was the codefendant's accomplice (cf. § 1111 [accomplice is one who is liable to prosecution for the identical offense charged against the defendant]), it did not instruct on that principle of law. Instead, the court told the jury it should distrust defendant's testimony and hers alone, without explaining why. This was clear error.[7]

---

[7] The wording of CALCRIM No. 301 points to a further problem. As noted, where the court gives the instruction because the witness may be an accomplice, it must add the language "if you decide (he/she) is an accomplice." But here the court could not so instruct because the jury was not asked to decide whether defendant was codefendant's accomplice. Instead, the court finessed the problem by omitting both the accomplice language and the underlying legal principle.

8

The Attorney General relies on *People v. Turner* (1990) 50 Cal.3d 668 (*Turner*) to justify the instruction in our case. But the instruction discussed in *Turner,* unlike that given here, did not mysteriously single out the testimony of a particular witness for distrust.

In *Turner*, the trial court instructed the jury with CALJIC No. 2.27, the predecessor to CALCRIM No. 301, as follows: " 'Testimony which you believe given by one witness is sufficient for the proof of any fact. However, before finding any fact . . . to be proven solely by the testimony of such a single witness, you should carefully review all the testimony upon which the proof of such fact depends.' " (*Turner, supra*, 50 Cal.3d at p. 696, fn. 12.) The defendant, who testified at trial, argued that the court erred by not adding to the second sentence, after the words "any fact," the phrase " '*required to be established by the prosecution*' " because applying the cautionary principle to a defense witness undercut the prosecution's burden of proof. (*Id.* at pp. 696-697, italics added.) The Supreme Court disagreed: "[A]n accused is not entitled to a false and unique aura of veracity when his uncorroborated testimony is offered as evidence *raising a reasonable doubt* that he is guilty as charged. [Citation.] When the accused offers his uncorroborated testimony for this purpose, the jury should weigh such evidence with the same caution it accords similarly uncorroborated testimony by a prosecution witness." (*Id.* at p. 697.)[8]

---

[8] The high court acknowledged that "the instruction's wording could [have] be[en] altered to have a more neutral effect as between prosecution and defense" and "encourage[d] further effort toward the development of an improved instruction." (*Turner, supra*, 50 Cal.3d at p. 697, fn. omitted.) On the facts of the case, however, the court concluded the jury could not have been misled about the People's burden of proof. (*Ibid*.)

9

Thus, the *Turner* instruction merely told the jury, abstractly and neutrally, to treat the testimony of all witnesses with equal caution. The fact that that instruction was upheld as legally correct does nothing to salvage the instruction in our case.

Because the jury was not told of any legal principle that would justify treating defendant's testimony alone as insufficient to prove any fact, the jury could have concluded it should do so merely because she had been charged with crimes. To the extent this plausible understanding of the instruction might have improperly biased the jury against defendant, the instruction affected her substantial rights. Therefore her failure to object to the instruction does not forfeit her claim of error.

### The Error was Harmless Beyond a Reasonable Doubt

We conclude, however, that the error is not reversible per se. We also conclude the error is harmless under the *Chapman* standard because (1) most of defendant's testimony was corroborated, and (2) that which was not, concerning the circumstances of her detention and arrest, presented a credibility contest with the arresting officer which defendant could not have won even absent the erroneous instruction. Thus, we find beyond a reasonable doubt that the error did not contribute to the jury's verdict on counts 2 and 4.

#### *The Error was not Reversible Per Se*

Defendant asserts that the instruction unconstitutionally shifted the burden to the defense and undercut the jury's duty to find all elements of the charges against her true beyond a reasonable doubt. But the jury was properly instructed on the People's burden of proof and on the elements of all charges against her, and we presume the jury understood and applied those instructions. (*People v. Holt* (1997) 15 Cal.4th 619, 662.) Defendant cites nothing in the record that rebuts this presumption.

Furthermore, defendant cites no authority on point to support her assertion, and we have found none. She relies on *Sandstrom v. Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39] (*Sandstrom*) and *People v. Roder* (1983) 33 Cal.3d 491 (*Roder*), but those cases are

10

distinguishable. In *Sandstrom* and *Roder*, the juries were instructed to presume conclusively, absent defense rebuttal, that an element of the offense was true, thus improperly shifting the burden on that point to the defendant and relieving the prosecution of its burden to prove all elements of the offense true beyond a reasonable doubt. (*Sandstrom, supra,* 442 U.S. at pp. 521-524 [61 L.Ed.2d at pp. 49-51]; *Roder, supra*, 33 Cal.3d at pp. 496-504.) The instruction given here did not convey any such mandatory presumption.

Defendant also asserts that the instruction deprived her of her constitutional right to present a defense. But the only supporting authority she cites is *People v. Schroeder* (1991) 227 Cal.App.3d 784 (*Schroeder)*, where the trial court improperly pressured and intimidated a material witness for the defense into abandoning her intent to testify. (*Id.* at pp. 788-794.) Here, defendant was allowed to testify in full and to present other witnesses on her behalf. *Schroeder* is therefore inapposite.

Defendant has shown no violation of her constitutional rights requiring reversal per se.

*The Error was Harmless*

Even assuming the *Chapman* standard of harmless error applies, defendant cannot show grounds for reversal.

First, as shown in our statement of facts, most of defendant's testimony was corroborated. Her first witness, Elizabeth Neubacher, testified that defendant planned to sell her Camaro to Gillis and Lenning, who drove it away. Her second witness, Marja Glasser, testified: (1) Gillis and Lenning left the car on her property in El Dorado County; (2) both men were much larger than defendant; (2) defendant and codefendant came to Glasser's house on September 24 to reclaim the car; (3) defendant was not wearing a jacket or sweatshirt and looked cold; (4) defendant was in pain and confusion due to a migraine; (5) Glasser proposed that she lead defendant and codefendant to a gas station because defendant was unable to grasp Glasser's directions. Collectively, this evidence,

11

directly or by reasonable inference, supported the essentials of defendant's story, including her most important claim: that the sweatshirt and the pouch which she produced from it were not hers, but came from the Camaro (left there by Gillis or Lenning, whose sweatshirts would have been too big for her) and were transferred to defendant's passenger seat by codefendant when he moved the Camaro's contents into her car.

Second, the parts of defendant's story which were not corroborated pitted her testimony against that of the officer's, posing a credibility contest for the jury in which defendant would have been extremely unlikely to prevail even had the objectionable instruction not been given. Her claim that she did not know there was methamphetamine in the pouch she gave Deputy Peterson was controverted by Peterson's testimony that she continuously touched the bulge in the sweatshirt which turned out to hold the pouch (suggesting guilty knowledge), the magnets in the pouch and the large baggie found in codefendant's car (placed there to facilitate transporting contraband in concealed locations), the marks found on the wheel wells of defendant's car, and the reasonable inferences to be drawn from the recorded conversation between defendant and codefendant about where "it" had been or should have been stored. Given all this evidence, together with defendant's obvious motive for fabrication and the patently contrived character of her entire story, we see no possibility that the jury would have resolved the credibility contest in defendant's favor even absent the instruction at issue.

For all the above reasons, we conclude that defendant has not shown prejudice from the instruction.

## II

Defendant contends, and the Attorney General agrees, that the abstract of judgment requires correction as to certain fines and fees.

The trial court orally imposed a $180 drug laboratory fee pursuant to Health and Safety Code section 11372.5, subdivision (a) (authorizing a $50 fee for each conviction

12

of certain enumerated drug offenses), and a $540 drug education fee pursuant to Health and Safety Code section 11372.7, subdivision (a) (authorizing a $150 fee for each such conviction).  The abstract of judgment, however, states that the drug laboratory fee is $190 and the drug education fee is $570; it also miscites the statutes as "11372.5(a) PC" and "11372.7(a) PC."

Because no basis in the record appears for the higher amounts stated in the abstract of judgment, we remand the matter for the preparation of a corrected abstract of judgment that reflects the amounts of the fines stated by the trial court and sets them out under the correct statutes.

## DISPOSITION

The judgment is affirmed.  The matter is remanded to the trial court with directions to prepare a corrected abstract of judgment as set out in part II of the Discussion and to forward a certified copy of the corrected abstract to the Department of Corrections and Rehabilitation.

                                                _____BLEASE_____, J.

We concur:

_____RAYE_____, P. J.

_____HULL_____, J.